NOT FOR PUBLICATION                                    [Dkt. No. 61]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| DEBORAH HEART AND LUNG CENTER,<br><br>    Plaintiff,<br><br>v.<br><br>PENN PRESBYTERIAN MEDICAL CENTER, et al.,<br><br>    Defendants. | Civil No. 11-1290 (RMB)(KMW)<br><br>**OPINION & ORDER** |

Appearances:

    Anthony Argiropoulos
    Scott B. Murray
    Thomas Kane
    Sills Cummis & Gross, P.C.
    650 College Road East
    Princeton, New Jersey 08540

        Attorneys for Plaintiff Deborah Heart and Lung Center

    Robert A. White
    Morgan, Lewis & Bockius LLP
    502 Carnegie Center
    Princeton, NJ 08540

    Jay H. Calvert, Jr.
    R. Brendan Fee
    Morgan, Lewis & Bockius LLP
    1701 Market Street
    Philadelphia, PA 19103

        Attorneys for Defendants Presbyterian Medical Center
        of the University of Pennsylvania Health System,
        University of Pennsylvania Health System, Penn Cardiac
        Care at Cherry Hill, and Clinical Health Care
        Associates of New Jersey, P.C.

**BUMB**, United States District Judge:

Defendants Presbyterian Medical Center of the University of Pennsylvania Health System, University of Pennsylvania Health System, Penn Cardiac Care at Cherry Hill, and Clinical Health Care Associates of New Jersey, P.C. (the "Penn Defendants") have moved for reconsideration of the Court's 12/30/2011 Opinion (the "Opinion"). <u>Deborah Heart and Lung Center v. Penn Presbyterian Medical Center</u>, No. 11-1290, 2011 WL 6935276 (D.N.J. Dec. 30, 2011). For the reasons that follow, that motion is DENIED.

I.  Background

The Penn Defendants previously moved for dismissal of Plaintiff Deborah Heart and Lung Center's Amended Complaint (the "Complaint"). The Complaint made two claims: (1) violation of Section 1 of the Sherman Act; and (2) violation of Section 2 of the Sherman Act. The Court concluded that Plaintiff had only plausibly alleged the first claim – that Defendants were engaged in a conspiracy to exclude Plaintiff from the market for certain advanced cardiac intervention procedures by transferring patients requiring those procedures exclusively to the Penn Defendants. The Court further concluded that the Penn Defendants' participation in that alleged conspiracy was plausibly motivated by economic self-interest, as Penn was alleged to be the primary beneficiary of the exclusionary conduct. The Court's rejection of the second claim was largely

2

driven by the implausibility of the allegation that the Penn Defendants intended that its co-defendants monopolize the market for certain advanced cardiac intervention procedures. The Court therefore allowed the first claim to proceed and dismissed the second claim.

II. Standard

In this District, motions for reconsideration are governed by Local Rule 7.1(i), which allows a court to reconsider a decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. Flores v. Predco Servs. Corp., No. 10-1320, 2011 WL 3273573, at *1 (D.N.J. July 29, 2011). The purpose of the motion is to correct manifest errors of law or fact or to present newly discovered evidence. Id. at *2 (quotation and citation omitted).

III. Analysis

The Penn Defendants now argue that reconsideration of the Opinion is warranted on two grounds based on errors of law by the Court.

First, the Penn Defendants argue that Plaintiff failed to plausibly allege their participation in the alleged Section 1 conspiracy. The Penn Defendants contend that the Court's conclusion otherwise "irreconcilably conflicts" with the Third Circuit's decision in Howard Hess Dental Labs. Inc. v. Dentsply

3

Int'l, Inc., 602 F.3d 237 (3d Cir. 2010). They claim that that case stands for the proposition that "allegations that a party acted pursuant to its independent economic interest with the desire of 'increasing profits,' cannot give rise to a plausible inference of conspiracy between non-vertical actors in the aftermath of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)." They argue that, applying this rule, a finding of concerted action by the Penn Defendants' is precluded by the Court's finding that their participation in the alleged conspiracy was motivated by economic self-interest. Their argument fails, however, because it is premised on a faulty interpretation of Dentsply.

Dentsply did not hold that, as a general matter, the fact that a party was acting pursuant to its own economic self-interest precludes the possibility that it was engaging in concerted, as opposed to independent, action. Dentsply, 602 F.3d at 255-256. That holding would run contrary to well-established law, discussed in the Court's Opinion and again below, that anti-competitive motive is not necessary to sustain a Section 1 claim.[1] Rather, Dentsply addressed a hub and spoke conspiracy in which the Plaintiff had failed to plausibly allege

---

[1] Dentsply itself is in accord on this point. Dentsply, 602 F.3d at 256 n. 8 (observing that the Third Circuit's prior decision in Fineman v. Armstrong World Industries, Inc., 980 F.2d 171 (3d Cir. 1992) held that Section 1 claims do not require the defendants to share identical motives, only for the defendants to be parties to an agreement).

4

connections between the spokes. Dentsply, 602 F.3d at 255. That finding was predicated on the Circuit's conclusions that: (1) each of the spokes would have been independently economically motivated to engage in the alleged conduct; (2) there were no allegations suggesting coordination between the spokes; and (3) the allegations were not "placed in a context that raises a suggestion of a preceding agreement among the" spokes. Id. at 255-56 (quotation omitted). Thus, Dentsply only stands for the more limitation proposition that allegations of conduct, consistent with economic interest, but without allegations suggesting coordination or a context "that raises a suggestion of" preceding agreement between the parties, are insufficient to plausibly establish concerted action. Where, however, a plaintiff offers either direct evidence of coordination or agreement, or places allegations of parallel conduct in a context that raises a suggestion of a preceding agreement, or offers a satisfactory combination of the two, such allegations are sufficient to plausibly establish agreement. In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 323 (3d Cir. 2010)(holding that "[a]llegations of direct evidence of an agreement, if sufficiently detailed, are independently adequate" to support a conspiracy claim); Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 323 (2d Cir. 2010)(noting that allegations of parallel conduct may be sufficient where they are

5

"placed in a context that raises a suggestion of a preceding agreement")(quotation and citation omitted); In re Ins. Brokerage, 618 F.3d at 324 n. 24 (noting that a plaintiff need not commit to a single method of proof).

As indicated in the Court's prior Opinion, Plaintiff has plausibly alleged the Penn Defendants' participation in the alleged conspiracy through direct and circumstantial evidence. Plaintiff has submitted direct evidence that the Penn Defendants' conduct was coordinated with its alleged co-conspirators, not independent. Plaintiff directly alleged a written agreement between the Penn Defendants and Defendant The Cardiology Group, P.A. It also offered proof of coordination in the form of a written e-mail between all the parties to the alleged conspiracy, which the Plaintiff claims reports on the conspiracy's ongoing effectiveness. These allegations alone would be sufficient to plausibly support the Penn Defendants' participation in the alleged conspiracy. Id. at 323 ("It bears noting that, consistent with summary judgment analysis, [contextual allegations] need be pled only when a plaintiff's claims of conspiracy rest on parallel conduct.").

Those allegations are buttressed by Plaintiff's circumstantial evidence allegations. These allegations provide contextual support for the existence of a preceding agreement and would independently plausibly support the Penn Defendants'

6

participation in the alleged conspiracy.  In this Circuit, courts relying on contextual allegations look to certain "plus factors."  Wallach v. Eaton Corp., 814 F. Supp. 2d 428, 440 (D.Del. 2011).  They include: (1) motive to enter the conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy.  In re Ins. Brokerage Antitrust Litig., 618 F.3d at 321-22.  These factors, however, are not exhaustive and a plaintiff must only establish one "plus factor."  Id. at 322-23 (holding that there is "no finite set" of plus factors and that "plaintiffs relying on parallel conduct must allege facts that, if true, would establish at least one plus factor")(quotation omitted).

    Here, Plaintiff has alleged economic motivation on the part of the Penn Defendants – profit.  It has also alleged traditional evidence of conspiracy.  Traditional evidence of conspiracy can include "overt acts more consistent with some pre-arrangement for common action than with independently arrived-at decisions." Id. at 322 (citing to Areeda & Hovenkamp for this proposition).  Plaintiff alleged: (1) a large shift in patient transfers, inuring to the Penn Defendants' benefit, consistent with the alleged agreement; (2) that that shift was made in spite of increased medical risks and costs; and (3) coercive conduct by the Penn Defendants' alleged co-

7

conspirators, in the face of contrary legal obligations, in enforcement of the alleged agreement. Deborah, 2011 WL 6935276, at *5. This is not a hub and spoke conscious parallelism case like Dentsply and it is highly unlikely that these alleged actions would have resulted from "chance, coincidence, independent responses to common stimuli, or mere interdependence unaided by an advanced understanding between the parties." Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 323 (2d Cir. 2010)(listing applicable inquiry in assessing contextual allegations). While the parties dispute whether there are allegations that the Penn Defendants have acted against self-interest, this Court need not resolve that dispute at this time. Plaintiff has alleged two of the three "plus factors" and, even absent the direct evidence of conspiracy described above, has placed the allegations of parallel conduct "in a context that raises a suggestion of a preceding agreement, not merely parallel conduct." Starr, 592 F.3d at 322 (quotation omitted). In any event, even if Plaintiff's direct and contextual allegations were insufficient standing alone, together they leave no doubt that Plaintiff has plausibly alleged the Penn Defendants' participation in the alleged conspiracy.[2] The Court

---

[2] Burtch v. Milberg Factors, Inc., 662 F.3d 212 (3d Cir. 2011), In re Ins. Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010), and TruePosition, Inc. v. LM Ericsson Telephone Co., No. 11-4574, 2012 WL 33075 (E.D.Pa. Jan. 6, 2012), also cited by the Penn Defendants in support of their argument, are consistent with this Court's analysis.

therefore rejects reconsideration of its Opinion on this basis.

Second, the Penn Defendants argue that the Court's finding, in the context of Plaintiff's Section 2 claim, that Plaintiff had failed to plausibly allege that the Defendants shared an anti-competitive motive to "bestow a monopoly" on one of Penn's alleged co-conspirators, is fatal to Plaintiff's ability to establish the unity of purpose/common scheme necessary to sustain a Section 1 claim.  That conclusion does not follow factually or legally.

Factually, the Court's finding that Plaintiff had failed to plausibly allege the Section 2 scheme does nothing to foreclose the plausibility of the Section 1 scheme.  And, as discussed above and in the Opinion, the Court found that Plaintiff had, in

---

Those cases all dealt with Section 1 claims that lacked the type of direct allegations of coordinated behavior present here.  <u>Burtch</u>, 662 F.3d at 226 (noting that the plaintiff had failed to allege direct evidence of an agreement); <u>Brokerage</u>, 618 F.3d at 362 (elaborating on law when Section 1 claim was based on "parallel conduct"); <u>TruePosition</u>, 2012 WL 33075, at *21 (finding no direct evidence of agreement).  Those cases made clear, however, that plaintiffs lacking direct allegations of coordinated behavior could still plausibly allege a conspiracy if they placed their allegations of parallel behavior in the appropriate context.  <u>Burtch</u>, 662 F.3d at 228 ("<u>Twombly</u> further required allegations be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could <u>just as well be</u> independent action.")(quotation and citation omitted)(emphasis in original);  <u>Brokerage</u>, 618 F.3d at 362 (finding that allegations of parallel conduct "must be placed in some setting suggesting the agreement necessary to make out a" Section 1 claim sufficient to survive a motion to dismiss)(citing to <u>Twombly</u>); <u>TruePosition</u>, 2012 WL 33075, at *25 (finding that the complaint came "close to stating a claim . . . but that it does not allege sufficient factual matter to indicate that the alleged conduct of [the defendants] was more likely the result of an unlawful agreement than independent action" and allowing plaintiff "the opportunity to cure this defect and to submit an amended pleading that more fully describes conduct placing the Defendants' conduct within the context of a preceding agreement").

fact, plausibly alleged a common scheme to exclude it from the market for certain advanced cardiac intervention procedures. Legally, Section 1 claims do not require the anti-competitive motive that Section 2 claims impose and that was the basis for the Court's rejection of Plaintiff's Section 2 claim. U.S. v. Brown University in Providence in the State of Rhode Island, 5 F.3d 658, 672 (3d Cir. 1993)(recognizing that "good motives" will not "validate an otherwise anticompetitive practice") (quotation and citation omitted); Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 507 (2d Cir. 2004)("The evidence must prove defendants had an intent to adhere to an agreement that was designed to achieve an unlawful objective; specific intent to restrain trade is not required."); Carpet Group Int'l v. Oriental rug Importers Ass'n, 256 F. Supp. 2d 249, 256 (D.N.J. 2003)(recognizing that "a section 2 conspiracy claim is harder to prove than a section 1 claim, particularly because the former requires a showing of specific intent."); Murray v. Nat'l Football League, No. Civ. A. 94-5971, 1996 WL 363911, at *18 (E.D. Pa. June 28, 1996)("Plaintiff need not allege an intent on the part of the co-conspirators to restrain trade, so long as the purported conspiracy has an anti-competitive effect, plaintiff has made out its case."). Rather, Section 1 only requires the plaintiff to plausibly allege a motive for participation in the

10

conspiracy. Deborah, 2011 WL 6935276, at *6, n. 7 (citing to cases for proposition that each co-conspirator must only have "motive to conspire"). The Court found, and the Penn Defendants do not dispute, that the Penn Defendants had an economic incentive to participate in the alleged conspiracy. That was sufficient. Accordingly, the Court rejects the Penn Defendants' second argument in support of its motion for reconsideration.

IV. Conclusion

For all these reasons, this Court concludes that it made no error of law in its prior Opinion. The Penn Defendants' motion for reconsideration is therefore DENIED.

                                   s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   United States District Judge

Dated: April 19, 2012